**BARTON & LUDWIG, INC., and Hartford Accident & Indemnity Co., Plaintiffs,**

v.

**FIDELITY & DEPOSIT COMPANY OF MARYLAND and St. Paul Fire and Marine Insurance Company, Defendants.**

Civ. A. No. C81–1869A.

United States District Court, N.D. Georgia, Atlanta Division.

Sept. 23, 1983.

Walter B. McClelland, Henning, Chambers & Mabry, Atlanta, Ga., for plaintiffs.

W.H. Duckworth, Jr., Jonesboro, Ga., Philip C. Henry, Hart & Sullivan, Atlanta, Ga., for defendants.

## ORDER

ROBERT H. HALL, District Judge.

This breach of contract action arises from the refusal of defendants, two insurance companies, to defend plaintiff Barton & Ludwig, Inc. when it was brought in as a third party defendant in a tort suit. Jurisdiction is pursuant to 28 U.S.C.A. § 1332. Presently pending before the court is defendants' motion to strike plaintiffs' claim for attorney's fees and other defense costs (totalling $12,235.30) expended by plaintiff Hartford Accident & Indemnity Co. in the defense of plaintiff Barton & Ludwig in the prior action.

### FACTS

Plaintiff Barton & Ludwig was brought in as a third-party defendant in a suit initiated by Cheryl J. Jenkins in 1978. *See Jenkins v. First Federal Savings and Loan Association of Cedar Falls, Iowa v. Barton & Ludwig, Inc. and Bowest Corporation,* No. C78–1684A (N.D.Ga. Feb. 12, 1981). That action was for injuries sustained when the deck of a house owned by First Federal Savings and Loan Association of Cedar Falls, Iowa, ("First Federal") collapsed. First Federal, the defendant in that action, filed a third party claim against Barton & Ludwig (a plaintiff in the present action), who was the real estate agent and broker retained to market the house, and against Bowest Corporation ("Bowest"), the company who was servicing the mortgage on the house.

Barton & Ludwig requested St. Paul Fire and Marine Insurance Company ("St. Paul") and Fidelity & Deposit Company of Maryland ("Fidelity") (the defendants in the present action) to defend and provide coverage to it as an "additional insured" under policies issued to First Federal and Bowest, respectively. Barton & Ludwig claimed it was a "real estate manager" of both First Federal and Bowest and thus entitled to coverage by St. Paul and Fidelity under a provision in the insurance policies which named as an insured, in addition to the named insured, "[a]ny person ... or organization while acting as a real estate manager for the named insured."

St. Paul and Fidelity both denied that Barton & Ludwig was a "real estate manager" of their respective policy holders and refused defense and coverage to it. Thereafter, Hartford Accident and Indemnity Company ("Hartford") (a plaintiff in the present action) employed counsel to defend Barton & Ludwig pursuant to a Hartford insurance policy identifying Barton & Ludwig as the named insured.

The *Jenkins* case resulted in a jury verdict on February 12, 1981, in favor of plaintiff Jenkins against First Federal and in favor of First Federal against the third party defendants. Motions were filed by all the defendants seeking various forms of relief as to the jury verdicts. While these motions were pending, the parties reached a settlement agreement and agreed to dismiss the motions. Hartford agreed to pay on behalf of Barton & Ludwig a total of $20,-600, expressly reserving the right to pursue the claim that Barton & Ludwig was an insured under the insurance policies issued to First Federal and Bowest, and, therefore, wrongfully denied defense and coverage by St. Paul and Fidelity.

On October 13, 1981, Barton & Ludwig and Hartford filed the present suit asserting such a claim. Included in their damage claim is a request for the defense costs incurred by Hartford in the defense of Barton & Ludwig. Defendants have moved to strike this damage claim on the ground that neither plaintiff has a right to recover these costs.

DISCUSSION

In analyzing the viability of the claim for defense costs, the court will look only to plaintiff Hartford's rights. Although the defense costs were incurred on behalf of plaintiff Barton & Ludwig, Barton & Ludwig itself clearly suffered no loss and therefore has no cause of action. If an action for defense costs exists, it will lie with plaintiff Hartford.

█ The issue of contribution between insurers as to defense costs has not been addressed in Georgia. This court, then, has the responsibility of determining how a Georgia court would decide this question.

Assuming the Georgia courts would follow the basic rule of contract construction that contractual language is to be given its plain, ordinary and popular meaning, *see Atlas Assurance Co. Ltd. v. Lies,* 70 Ga.App. 162, 27 S.E.2d 791 (1943), this court concludes that a Georgia court would find that the Hartford insurance policy created a personal duty to defend Barton & Ludwig. The policy clearly stated:

> [T]he company shall have the right and duty to defend any suit against the insured seeking damages on account or . . . bodily injury or property damage. . . .

Thus, when Hartford undertook the defense of Barton & Ludwig in the *Jenkins* action, it was doing no more than it was obligated under the terms of its contract with Barton & Ludwig. The fact that there may have been other insurance coverage did not relieve Hartford of its obligation to defend its insured in the tort action. *National Surety Corp. v. Dunaway,* 100 Ga.App. 842, 112 S.E.2d 331 (1970). Hartford cannot now demand that the defendants contribute to the fulfillment of its own contractual obligation, absent a specific contractual agreement to that effect. *In accord Argonaut Insurance Co. v. Maryland Casualty Co.,* 372 So.2d 960 (Fla.App.1979); *Sloan Construction Co. v. Central National Insurance Co.,* 269 S.C. 183, 236 S.E.2d 818 (1977).

The court finds that plaintiffs' damage claim for defense costs must be dismissed.

█ Plaintiffs offer four bases for reaching an opposite result, all of which are rejected by the court. First, plaintiffs cite the "collateral source rule" and its underlying purpose as authority for imposing the defense costs on defendants. The collateral source rule, traditionally a rule of tort law, is that payments to an injured party from a collateral source do not diminish the liability of the tortfeasor. *Aretz v. United States,* 456 F.Supp. 397, 407 (S.D.Ga.1978). The essence of plaintiffs' argument is that this traditional tort rule supports a rule that payments to an injured party from a *collateral insurance carrier of the tortfeasor* do not diminish the liability of the *tort-*

*feasor's other insurance carrier.* The reasoning advanced for this liberal construction is that an insurance carrier who breaches an insurance contract is not entitled to a windfall merely because the insured had the foresight to obtain additional insurance, just as a tortfeasor is not entitled to a windfall when the injured person had the foresight to obtain insurance.

Even if the court accepted such a collateral source rule for insurance, the rule does not support plaintiffs' claim for defense costs. Imposing the costs of defense on Hartford would not diminish the *liability* of defendants if a breach of contract is found; defendants would still be responsible for at least part of the settlement amount. Admittedly, the defendants would escape paying the defense costs and therefore gain a windfall, but this does not amount to a reduction in the defendants' *liability.* Thus, plaintiffs' first argument does not provide authority for placing the defense costs on defendants.

 Plaintiffs' second argument is that Hartford is subrogated to Barton & Ludwig's cause of action for the defense costs because it paid them. This argument fails because Barton & Ludwig suffered no loss; Hartford has no cause of action to which it can be subrogated.

Plaintiffs' third argument is that Hartford is entitled to indemnification of the defense costs because it assumed the defendants' obligation to defend. This argument fails because the defense costs were incurred to fulfill Hartford's *own* contractual obligation to defend. Furthermore, there was no express or implied promise by defendants to compensate Hartford for such defense.

Plaintiffs' final argument is that Hartford was an "excess insurer" in connection with the *Jenkins* case and as such should be entitled to recover the defense costs from defendants as "primary insurers." This argument fails because the duty to defend would still be personal to Hartford even if it was an excess insurer; an excess insurer does not have the right to seek contribution either. *In accord Petrol Industries v. Gearhart-Owen Industries,* 424 So.2d 1059 (La.App. 2d Cir.1982).

The motion to strike the claim for defense expenses is GRANTED.

So ORDERED this 23 day of September, 1983.