FORUM INSURANCE COMPANY, an
Illinois corporation, Plaintiff,

v.

RANGER INSURANCE COMPANY, a
Texas corporation, Defendant.

RANGER INSURANCE COMPANY,
Third–Party Plaintiff,

v.

DESNOYERS & ASSOCIATES, INC.,
an Illinois corporation, Third–Party
Defendant.

No. 88 C 2458.

United States District Court,
N.D. Illinois, E.D.

April 10, 1989.

Edward F. Ruberry and Elizabeth A. Pitrof, Burditt, Bowles, Radzius & Ruberry, Chicago, Ill., for plaintiff.

Robert Marc Chemers, Pretzel & Stouffer, Chtd., Chicago, Ill., for defendant and third-party plaintiff.

Michael H. King and Brian A. Sher, Ross & Hardies, Chicago, Ill., for third-party defendant.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

### I. INTRODUCTION

The plaintiff, Forum Insurance Co., filed this diversity action against Ranger Insurance Co., asking that Ranger be required to share with Forum the costs of defending a mutual insured, Desnoyers & Associates, Inc. and Richard Desnoyers (collectively, Desnoyers).[1] In Count I Forum seeks a declaratory judgment that Ranger was obligated to defend Desnoyers and that Ranger pay, under a theory of contribution, a share of past and future expenses incurred in defending Desnoyers. In Count II Forum seeks an identical declaratory judgment under a subrogation theory. Ranger

---

1. Forum is an Illinois corporation with its principal place of business in Illinois; Ranger is a Texas corporation with its principal place of business in Texas.

moved to dismiss Forum's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), claiming that Ranger was not obligated to defend Desnoyers because Desnoyers never tendered its defense to Ranger. Furthermore, Ranger argued, under Illinois law an insurer has no right to receive from a second insurer contribution towards or reimbursement of expenses incurred in the defense of a mutual insured.

Ranger then filed a third-party complaint against Desnoyers, ostensibly pursuant to Rule 14(a), seeking a declaratory judgment that it was not liable to Desnoyers under its insurance policy issued to Desnoyers and, therefore, that it did not have a duty to defend Desnoyers. Desnoyers moved to dismiss the third-party complaint on the ground that it did not allege that Desnoyers was liable for all or part of Forum's claim against Ranger. For the following reasons, the court denies Ranger's motion to dismiss the first amended complaint, but grants Desnoyers' motion to dismiss the third-party complaint.

## II. FACTS

For purposes of a motion to dismiss, the court must accept as true all well-pleaded factual allegations in the complaint and must draw all reasonable inferences in the light most favorable to the plaintiff. *Powe v. City of Chicago*, 664 F.2d 639, 642 (7th Cir.1981). A complaint should not be dismissed for failure to state a claim unless it is beyond doubt that the plaintiff could prove no set of facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). The court, however, need not accept as true legal conclusions or opinions that are couched as factual allegations. *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir.1981), *aff'd*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). Accordingly, the facts of this case, as alleged in the plaintiff's amended complaint, are as follows.

In 1984 Forum issued a liability insurance policy to Desnoyers, an Illinois corporation engaged in the business of private investigations. The policy provided professional liability coverage for the term from April 1, 1984, to April 1, 1985. In 1985 Ranger issued to Desnoyers a professional liability policy that covered the term from April 1, 1985, to April 1, 1986.

In June 1986, persons not parties to this action filed suit against Desnoyers in federal court, alleging violations of the Racketeer Influenced and Corrupt Organizations Act, the Civil Rights Acts, and the Fair Credit Reporting Act. (The complaint also contained a pendent state claim for breach of contract.) The same plaintiffs also sued Desnoyers in state court, alleging invasion of privacy, intentional infliction of emotional distress, intentional interference with contractual relations, and harassment of witnesses. On July 21, 1986, Desnoyers tendered the defense of both the federal and the state court actions to Forum for defense and indemnification under the Forum policy. Forum accepted its obligation to defend subject to a reservation of rights, under which Forum claimed that the wrongful acts and damages alleged may not have taken place during the term covered by the Forum policy. Forum, through its claims agent, Ed Flavin, then suggested to Desnoyers' insurance agent, the Cutrona Insurance Agency, that it notify Desnoyers' subsequent liability insurers in order to invoke all applicable coverage. *See* Amended Complaint, Exh. E (Flavin suggested that Desnoyers notify Ranger of the claim).

On December 5, 1986, Cutrona, acting on behalf of Desnoyers, sent a "notice of claim" letter to Ranger, *see id.* ¶ 9, in which Cutrona notified Ranger of the pending suit against Desnoyers. (Cutrona also stated that the letter was prompted by Flavin's suggestion that Desnoyers notify its subsequent insurance carrier.) After noting that there was a question regarding the date of the alleged incidents in the Desnoyers suit (and, therefore, a question of policy coverage), Cutrona suggested that Ranger "may wish to coordinate [its] efforts with Mr. Flavin of the Forum Insurance Company." The letter included Flavin's direct dial number and, in closing, stated: "[P]lease furnish our office with

your claim number once it has been assigned." The letter apparently included a copy of Desnoyers' July 21, 1986, tender letter to Forum as well as all relevant documents.[2]

On December 15, 1986, Ed Flavin, on behalf of Desnoyers, wrote to Ranger, stating: "We are advised by the Cutrona Insurance Agency ... that you are the comprehensive general liability carrier for the captioned defendants under policy # C.G.L. 53–36–99, effective 4–1–85 to 4–1–86. They wrote your office on December 5, 1986 and placed you on notice of the captioned matter." The letter claimed that some of the reported acts in the Desnoyers suits occurred prior to the coverage period on Forum's policy and, therefore, that Forum was defending under a reservation of rights. Forum then asked for Ranger's "cooperation in contributing to the defense of the insured as well as to any indemnity that may be awarded to the plaintiffs for acts covered by our respective policies." *Id.*, Exh. F.

On March 4, 1987, Ranger responded to this letter, stating that it had "determined that the litigation which is the subject of these claims makes no allegations which would invoke either a duty to indemnify or defend Desnoyers and Associates under Ranger Policy No. CG533699." *Id.*, Exh. G. Since then, Ranger has refused to defend Desnoyers or to contribute to the defense costs incurred by Forum. Forum has paid and continues to pay all costs of defense.

On March 23, 1988, Forum filed its original complaint against Ranger, in which Forum requested a declaratory judgment that Ranger is obligated to contribute to the costs of defense. Ranger filed a motion to dismiss on the ground that the complaint did not allege that Desnoyers tendered its defense to Ranger. Forum agreed to file a more specific amended complaint, to which Ranger's current motion to dismiss is directed. After this motion was briefed, Ranger then filed a third-party complaint

against Desnoyers, which promptly filed a motion to dismiss the third-party complaint.

In its motion to dismiss Ranger alleges that 1) its duty to defend never was triggered because Desnoyers did not tender its defense to Ranger, and 2) even if Desnoyers did tender its defense to Ranger, Forum cannot recover from Ranger the costs of defending a mutual insured—either under a contribution or subrogation theory. In its motion to dismiss the third-party complaint, Desnoyers claims that it cannot be impleaded into this action because it cannot be liable in any way to the third-party plaintiff, Ranger.

## III. MOTION TO DISMISS THE AMENDED COMPLAINT

### A. Adequacy of Tender

An insurer is obligated to defend an insured when it appears from the allegations of the complaint filed against the insured that the action potentially falls within the coverage of the policy. *West Am. Ins. Co. v. Hinze*, 843 F.2d 263, 265 (7th Cir.1988); *Solo Cup Co. v. Federal Ins. Co.*, 619 F.2d 1178, 1183 (7th Cir.), *cert. denied*, 449 U.S. 1033, 101 S.Ct. 608, 66 L.Ed.2d 495 (1980); *Colton v. Swain*, 527 F.2d 296, 302 (7th Cir.1975). The obligation to defend is broader than the obligation to indemnify; an insurer must defend even if the allegations in the complaint are groundless, false, or fraudulent and even though the insurer knows of facts which show that the claim falls outside the policy coverage. *See, e.g., Hartford Accident & Indem. Co. v. Gulf Ins. Co.*, 776 F.2d 1380, 1382 (7th Cir.1985); *Solo Cup*, 619 F.2d at 1183; *Colton*, 527 F.2d at 302. Any doubts over coverage must be resolved in favor of the insured. *Hartford*, 776 F.2d at 1382.

This duty to defend, however, is triggered only when the insured "tenders" to its insurer the defense of an action brought against it; in other words, the insured somehow must request that its insurer as-

---

2. Although the letter stated that it enclosed the July 21 letter as well as the relevant documents, none of these is included in Exhibit E. Since this court must view the allegations in the light most favorable to the plaintiff, however, the court will accept as true the allegations that the December 5 letter was a "notice of claim" from a party (Cutrona) acting on behalf of Desnoyers.

sume its defense. An insurer's "mere knowledge" that its insured has been sued is not enough. *Id.* at 1383. Rather, "[w]hat is required is knowledge that the suit is potentially within the policy's coverage coupled with knowledge that the insurer's assistance is desired" by the insured. *Id.* In addition, when the insured already is defended by another insurance company, courts find it "even more appropriate to require [the insured] to have actually required or requested [the second insurer] to assume [its] defense." *Id.* at 1383 n. 4. Furthermore, the fact that the first insurer has the authority to represent the insured in the underlying lawsuit does not give it the authority to require the second insurer to contribute to the defense. *Id.* at 1383 n. 3.

For example, in *Hartford* the court held that there had been no tender when, ten months after litigation began, an attorney for the insured's primary insurer, acting not at the insured's request but on his own initiative, asked a co-insurer to assume the insured's defense. The court so held even though the co-insurer had knowledge of the suit and had conducted an investigation of the underlying claim.[3] The court reasoned that since an insurance company that wrongfully refuses to defend will later be estopped from denying coverage, the insurer at least should be given the opportunity to defend—and that requires that the insured "tender" the claim. *Id.* at 1382–83.

In short, "[a]n insurance company is not required to intermeddle officiously where its services have not been requested." *Id.* at 1383 (*citing Oda v. Highway Ins. Co.*, 44 Ill.App.2d 235, 194 N.E.2d 489 (1963)).

■ In this case Ranger concedes that it had knowledge of the two pending suits against Desnoyers. The issue, then, is whether Desnoyers (as opposed to Forum) somehow requested that Ranger assist in its defense.[4]

This court concludes that the amended complaint adequately alleges facts which, if true, indicate that Desnoyers could have tendered its defense to Ranger on two occasions—by the December 5 letter from Cutrona and the December 15 letter from Forum. First, when Forum accepted Desnoyers' defense subject to the reservation of rights, Desnoyers knew that part or all of the claim against it might not be covered by the Forum policy. Cutrona, acting on behalf of Desnoyers, then decided to secure all possible insurance coverage and, in the December 5 "notice of claim" letter, informed Ranger of the pending suits (and of the possible gap in Desnoyers' coverage) and requested that Ranger assist in the defense. The letter not only included Desnoyers' July 21 tender letter to Forum (with its accompanying documents), but it also requested that Ranger coordinate its efforts with Forum and assign a claim number to the case. Thus, by this letter Desnoyers (acting through its agent, Cutro-

---

3. The co-insurer also was the primary insurer for the insured's co-defendant in the case.

4. Forum seizes upon language in *Hartford* implying that the standard for tender by laymen may be different from that by sophisticated corporate entities: "[It is unclear] what the appropriate procedures for tender, if any, should be for unschooled laymen (who may be excused from any sort of active tender)...." *Hartford,* 776 F.2d at 1383. Although Forum apparently does not dispute that Desnoyers should be required to make some sort of tender, it asserts that *Hartford*'s tender requirement does not apply to this case, since Desnoyers is a "small, private corporation," not a "large and sophisticated governmental entity" like the insured in *Hartford.* Plaintiff's Brief in Response to Defendant's Motion to Dismiss at 5–6.

On appeal from the district court's decision after remand, however, the Seventh Circuit stat-

ed that the language in *Hartford* was, at most, dicta:

> The panel's distinction [in the first case] between a sophisticated insured and an unsophisticated one reflects the panel's attempt to highlight the lack of any equitable reason to excuse the City's failure to tender. It did not change well-settled Illinois law, as illustrated by the fact that no reported federal or state case has cited the panel's earlier opinion for that distinction.

*Hartford Accident & Indem. Co. v. Gulf Ins. Co.,* 837 F.2d 767, 774 (1988). In any event, the insured in this case, Desnoyers, is not an unschooled layman but a corporate entity with its own insurance agent; in addition, Desnoyers already is being defended in the underlying suit by one insurance company. Therefore, the dictum in *Hartford* does not help Desnoyers, since "if anything it suggests lowering the traditional standard only for the unsophisticated." *Id.*

na) requested that Ranger assist in the underlying suit and, therefore, "tendered" its defense to Ranger.

Second, it is possible that Desnoyers also tendered its defense to Ranger by the December 15 letter from Forum. The complaint alleges that Forum acted "on behalf of"[5] Desnoyers when it wrote the letter calling upon Ranger to contribute to the defense and indemnity of Desnoyers. *See* Amended Complaint ¶ 10. The letter reminded Ranger that Forum was defending pursuant to a reservation of rights and asked that Ranger "contribut[e] to the defense of the insured as well as to any indemnity that may be awarded to the plaintiffs for acts covered by [the] respective policies." *Id.*, Exh. F.

Furthermore, it is significant that when Ranger declined to contribute to Desnoyers' defense, it did not give as a reason Desnoyers' alleged failure to tender, but instead claimed that "the litigation which is the subject of these claims makes no allegations which would invoke either a duty to indemnify or defend Desnoyers and Associates...." *Id.*, Exh. G.

Finally, the facts in *Hartford*, in which the Seventh Circuit held that no tender was effected, are distinguishable from this case. In *Hartford* the request to assume the insured's defense came from the rival insurance company's attorney, and there was no indication that the attorney was carrying out the wishes or orders of the insured. 776 F.2d at 1383. In this case, by contrast, the plaintiff has alleged that both purported requests to defend were made on behalf of the insured, and the events leading up to the two letters comport with this scenario. Accordingly, since the complaint alleges that the request for Ranger's participation in the payment of defense costs was made with the knowledge and concurrence of Desnoyers, the court at this time cannot conclude that Desnoyers did not "tender" its defense to Ranger.[6]

**B.  Contribution and Subrogation Between Co–Insurers**

Ranger next contends that even if Desnoyers adequately tendered its defense to Ranger, Forum, as co-insurer, cannot recover the costs of defense from Ranger— either under a contribution or subrogation theory. In making this argument Ranger embarks on a cross-country tour of the laws of various states—from Connecticut[7] to Tennessee[8] to Oklahoma[9] to California[10] to Texas[11] to Florida[12] to Indiana[13] to Louisiana[14] to South Carolina[15] to Georgia[16] and, finally, to Colorado[17]—yet, curiously, never cites any Illinois cases, even though it acknowledges that Illinois law applies. *See, e.g.,* Defendant's Motion to

---

**5.** The court notes that although the December 15 letter appears to be written by Forum and for its benefit, the complaint does allege that Forum wrote the letter "on behalf of its insured." Since this is a motion to dismiss, the court must accept that allegation as true.

**6.** Of course, the court at this time makes no ruling on the plausibility of the plaintiff's allegations, but must accept them as true.

**7.** *Transamerica Ins. Group v. Empire Mutual Ins. Co.,* 31 Conn.Supp. 235, 327 A.2d 734 (1974).

**8.** *Federated Mutual Ins. Co. v. Pennsylvania Nat'l Mutual Ins. Co.,* 480 F.Supp. 599 (E.D.Tenn. 1979), *aff'd in an unpublished order,* 659 F.2d 1080 (6th Cir.1981).

**9.** *E.g., Fidelity & Casualty Co. v. Ohio Casualty Ins. Co.,* 482 P.2d 924 (Okla.1971).

**10.** *Financial Indem. Co. v. Colonial Ins. Co.,* 132 Cal.App.2d 207, 281 P.2d 883 (1955). As the plaintiff points out, however, this case subsequently was overruled by *Continental Casualty Co. v. Zurich Ins. Co.,* 57 Cal.2d 27, 366 P.2d 455, 17 Cal.Rptr. 12 (1961).

**11.** *Westchester Fire Ins. Co. v. Rhoades,* 405 S.W. 2d 812 (Tex.Civ.App.1966).

**12.** *E.g., Argonaut Ins. Co. v. Maryland Casualty Co.,* 372 So.2d 960 (Fla.Dist.Ct.App.1979).

**13.** *Allstar Ins. Corp. v. Steel Bar, Inc.,* 324 F.Supp. 160 (N.D.Ind.1971).

**14.** *Grain Dealers Mutual Ins. Co. v. Hardware Dealers Mutual Fire Ins. Co.,* 196 So.2d 650 (La. Ct.App.1967).

**15.** *Sloan Constr. Co. v. Central Nat'l Ins. Co.,* 269 S.C. 183, 236 S.E.2d 818 (1977).

**16.** *Barton & Ludwig, Inc. v. Fidelity & Deposit Co.,* 570 F.Supp. 1470 (N.D.Ga.1983).

**17.** *Brayman v. Northwestern Mutual Ins. Co.,* 381 F.Supp. 362 (D.Colo.1974).

Dismiss the Plaintiff's First Amended Complaint at 9 (applying Illinois law).

■ Under Illinois law an insurer that fulfills its obligations to defend a mutual insured can recover from a co-insurer a share of the costs expended in such a defense as well as any indemnity payment—either under a contribution or subrogation theory. *See, e.g., Hartford Casualty Ins. Co. v. Argonaut–Midwest Ins. Co.,* 854 F.2d 279, 280 (7th Cir.1988) (citing Illinois cases); *Western Casualty & Surety Co. v. Western World Ins. Co.,* 769 F.2d 381, 383 (7th Cir.1985) (Illinois permits contribution suits to recover costs even though insured has suffered no loss; rationale applies to primary as well as excess carriers); *Home Ins. Co. v. Certain Underwriters at Lloyd's London,* 729 F.2d 1132, 1134 (7th Cir.1984) (equitable action for contribution lies when one insurer pays indemnity debt shared by other insurers); *New Amsterdam Casualty Co. v. Certain Underwriters at Lloyd's, London,* 34 Ill.2d 424, 431, 216 N.E.2d 665, 669 (1966) (insurer could recover costs of defense under subrogation theory) *(citing Continental Casualty Co. v. American Fidelity & Casualty Co.,* 275 F.2d 381 (7th Cir.1960)); *Pekin Ins. Co. v. Cincinnati Ins. Co.,* 157 Ill.App.3d 404, 406, 109 Ill.Dec. 656, 658, 510 N.E.2d 524, 526 (1987) (indemnity recoverable under contribution or subrogation theory); *Zurich Ins. Co. v. Northbrook Excess & Surplus Ins. Co.,* 145 Ill.App.3d 175, 199, 98 Ill.Dec. 512, 528, 494 N.E.2d 634, 650 (1986) (contribution action for indemnity payments and defense costs), *aff'd sub nom. Zurich Ins. Co. v. Raymark,* 118 Ill.2d 23, 112 Ill.Dec. 684, 514 N.E.2d 150 (1987); *Royal Globe Ins. Co. v. Aetna Ins. Co.,* 82 Ill.App.3d 1003, 1005, 38 Ill.Dec. 449, 451, 403 N.E.2d 680, 682 (1980) (contribution action for indemnity payment); *Aetna Casualty & Surety Co. v. Coronet Ins. Co.,* 44 Ill.App.3d 744, 750, 3 Ill.Dec. 371, 375, 358 N.E.2d 914, 918 (1976) (costs and indemnity recoverable under subrogation theory); *Fireman's Fund Indem. Co. v. Freeport Ins. Co.,* 30 Ill.App.2d 69, 76, 173 N.E.2d 543, 546 (1961) (costs and indemnity under subrogation theory).[18]

In its reply the defendant claims that these cases are distinguishable since they involved a suit subsequent to the entry of judgment against the insured—not an attempt to recover defense costs in an ongoing lawsuit. In *Colton,* however, the court declined to dismiss a third-party complaint brought by the defendant insureds against their insurance company for refusing to defend them in the underlying action. 527 F.2d at 298. The insurer/third-party defendant argued that the complaint should be dismissed because the contract contained a no-action and a no-impleader/joinder clause and because Illinois law prohibited direct actions (and, by implication, impleader) until a final judgment had been entered against the insured. *Id.* at 299. The court held that when an insurer refuses to defend its insured, the inclusion of the no-action clause does not bar impleader to determine the insurer's liability to the insured—even though judgment has not yet been entered against the insureds. *Id.* at 301–03. Furthermore, the court noted, "questions of an insurer's duty to defend are ripe for declaratory relief." *Id.* at 303 (*citing Sears, Roebuck & Co. v. Zurich Ins. Co.,* 422 F.2d 587, 589 (7th Cir.1970)). Thus, similar declaratory actions in the context of an ongoing lawsuit against the insured have not been deemed premature. *See also Fireman's Fund,* 30 Ill.App.2d at 72, 173 N.E.2d at 544 (declaratory judgment by one insurer who was still defending insured at time of suit). Accordingly, the defendant's arguments are without merit, and the court denies the motion to dismiss.[19]

---

**18.** The defendant, in conclusory fashion, attempts to distinguish these cases by claiming that they involved only indemnity payments, not litigation costs. As noted above, however, some of these cases did involve costs incurred in the defense of the mutual insured.

**19.** The defendant initially argued that the plaintiff was not entitled to reimbursement under a subrogation theory because the policy granted the plaintiff a subrogation right only to indemnity payments, not defense expenditures. As the plaintiff noted, however, the policy grants a subrogation right "in the event of *any* payment under this policy." Amended Complaint, Exh. A, § VIII(4) (emphasis added).

## IV. MOTION TO DISMISS THE THIRD–PARTY COMPLAINT

██ After Ranger filed its reply brief in support of its motion to dismiss, it then filed a third-party complaint against the insured, Desnoyers, asking for a declaratory judgment that it is not obligated to defend Desnoyers in the underlying suit. Desnoyers then filed a motion to dismiss the third-party complaint,[20] alleging that impleader is proper only when the third-party defendant could be liable, in whole or in part, to the third-party plaintiff.

This court agrees. Rule 14, which governs third-party practice, provides as follows:

> At any time after commencement of the action, a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action *who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff.*

Fed.R.Civ.P. 14(a) (emphasis added). According to the plain language of Rule 14(a), therefore, the distinguishing characteristic of a claim filed pursuant to Rule 14(a) is that the defendant is attempting to transfer to the third-party defendant the liability asserted against the defendant by the original plaintiff. *E.g., U.S. Gen. v. City of Joliet,* 598 F.2d 1050, 1053 (7th Cir.1979); *Parr v. Great Lakes Express Co.,* 484 F.2d 767, 769 (7th Cir.1973); *Leaseway Warehouses, Inc. v. Carlton,* 568 F.Supp. 1041, 1043 (N.D.Ill.1983); 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1446, at 246 (1971) (third-party claim proper only when third party's liability is in some way dependent on outcome of main claim or when third party is secondarily liable to defendant).[21] The fact that the third-party claim arose out of the same transaction or set of facts is irrelevant, since impleader cannot be used "as a way of combining all controversies having a common relationship." *Id.* § 1442, at 206.

In this case, Desnoyers in no way could be liable for any of Ranger's liability to Forum; therefore, the attempted impleader was improper under Rule 14(a). Ranger concedes that this position is "technically correct." Ranger Insurance Company's Response to Motion to Dismiss the Third Party Complaint at 3. Ranger argues, however, that two cases, *Old Republic Insurance v. Concast, Inc.,* 99 F.R.D. 566 (S.D.N.Y.1983), and *American Fidelity & Casualty Co. v. Greyhound Corp.,* 232 F.2d 89 (5th Cir.1956), have allowed impleader, even though contrary to the literal language of Rule 14(a), when the original suit was a declaratory judgment action, when both the original and the third-party actions turned on substantially the same facts (and impleader therefore would facilitate judicial economy), and when the third-

---

The defendant also argued in passing that the declaratory action is incapable of resolution because of the absence of an indispensable party—Desnoyers, the insured. The defendant, however, did not press this argument and, indeed, later brought the third-party complaint against the insured. Since the defendant has not properly presented the argument, the court will not address it at this time.

Finally, the court notes that the defendant has argued only whether contribution is available as a matter of Illinois law—not whether it would be appropriate in this particular case. Accordingly, by this ruling the court is not precluding the defendant from arguing in a summary judgment motion that contribution (or, for that matter, subrogation) is inappropriate in this case.

**20.** Ranger correctly describes the motion as "hybrid ... in that it purports to be brought pursuant to Rule 14(a) ... and not pursuant to any of the battery of motions provided for in Rule 12(b)...." Ranger Insurance Company's Response to Motion to Dismiss the Third Party Complaint at 1–2. Nevertheless, this court will treat the motion as one brought under Rule 12(b)(6), since Rule 14(a) provides that the third-party defendant "shall make any defenses to the third-party plaintiff's claim as provided in Rule 12," and the third-party defendant clearly has asked for dismissal.

**21.** In fact, the 1987 amendments to Rule 14(a) emphasize that the third-party defendant may be brought in only if he could be liable to the defendant for any of the plaintiff's claim against the defendant. Prior to the amendment the Rule provided as follows (with emphasis added):

> At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to *him* for all or part of the plaintiff's claim against *him.*

party defendant suffered no undue prejudice from being impleaded.

Even if these cases are correct (which this court does not decide), they do not help the defendant's cause. In both cases an excess insurer sued its insured, seeking a declaratory judgment that it was not liable under the policy. The defendant insured then impleaded a third party, alleging that if the insurer was not obligated to indemnify, the third-party defendant would be liable for any expenses incurred by the insured. The courts held that the classic indemnity model for Rule 14(a), under which impleader is proper only when the third-party defendant's liability derives from or is secondary to that of the defendant, does not apply in the context of a declaratory judgment action when the plaintiff insurer seeks to absolve itself of liability under the contract; in those cases, the courts reasoned, the defendant insured never would be liable to the plaintiff and, therefore, would not be able to "pass on" any of its liability to the third-party defendant. Such an interpretation of Rule 14(a), the courts noted, "makes it logically impossible for defendants [in these situations] to maintain third-party complaints." *Old Republic*, 99 F.R.D. at 568; *see American Fidelity*, 232 F.2d at 92 (common issues in two actions closely intertwined; third-party defendant not prejudiced). The courts held that the policy of Rule 14(a), "which is to facilitate judicial economy by avoiding multiple and circuitous suits, ... should not be defeated by a narrow or technical interpretation of the Rule's requirements." *Old Republic*, 99 F.R.D. at 568 (citations omitted).

Unlike the third-party plaintiffs in those cases, however, Ranger is not seeking to assert liability against the third-party defendant, but rather to deny that it is liable to the third-party defendant. Impleading a third-party defendant that is not liable to any party in this litigation would require not simply a "liberal construction" of Rule 14(a), but a complete disregard of its language. Furthermore, Ranger's concerns

over possible subsequent litigation by Desnoyers (since Desnoyers, not being a party to this litigation, would not be bound by it) are irrelevant to the decision whether to exercise ancillary jurisdiction. What Ranger apparently would like to do—join Desnoyers as a co-defendant—is impossible, since joinder of Desnoyers would destroy diversity.[22] Accordingly, the court grants the third-party defendant's motion to dismiss.

## V. CONCLUSION

For the foregoing reasons, the court denies Ranger's motion to dismiss Forum's first amended complaint, but grants Desnoyers' motion to dismiss the third-party complaint and, therefore, dismisses the third-party complaint without prejudice.

---

**22.** Forum and Desnoyers are both incorporated in Illinois. Moreover, Ranger has not argued that Desnoyers is an indispensable party under Rule 19. *See supra* note 19.